St. Louis Southwestern Railway Company v. Ledbetter.

Opinion delivered October 14, 1929.

*J. R. Turney, A. H. Kiskaddon* and *Wooldridge &
Wooldridge,* for appellant.

*Geo. F. Brown* and *Geo. H. Holmes,* for appellee.

SMITH, J. Appellee brought two suits against the appellant railway company, which were consolidated, and tried as a single case. In the first of these suits he alleged that on October 3, 1927, one of appellant's passenger trains had negligently killed one of his cows; and in the second suit he alleged the negligent killing of his dog on October 13, 1927.

The railway company admitted killing each of these animals, and no question was made as to their value, but it was alleged that the killing was unavoidable in each instance, and was not caused by any negligence on the part of any employee of the railway company.

It was disclosed that both animals were killed by an engine which was being operated by the same engineer and fireman in each instance. The testimony in regard to the cow was that it came on the track on the engineer's side at a point so near the engine, that it was impossible to stop the train after the presence and peril of the cow was discovered, although an efficient lookout had been maintained. The cow came out of an alley, and the engineer testified, that when he saw that she was about to come on the track "the only thing I could do was to kick the cylinder cocks open, and blow the whistle. What I mean by kick cylinder cocks open, we have a lever right at our feet, in case of stock or anything like that. It's put there to try to scare them away. I did not use that until the animal was approaching towards the engine; if the animal had stayed right where it was, it would have been all right. You understand that I did not kick the cylinder cocks open to scare the animal until she started approaching the engine. Then I did what I thought was

best. There was no way for me to have stopped the train within seventy to eighty feet, and I did what I thought was the next best thing to do.'' The jury evidently accepted this testimony as true, and returned a verdict in favor of the railway company in the suit for the cow.

The testimony in regard to the dog was that it came upon the track from the fireman's side, and was first seen at a distance of about 125 feet. The train consisted of seven or eight coaches, and was running at a speed of about forty miles per hour. The engineer did not see the dog, and could not have seen it from his side of the engine, and did not know it had been killed until he was told of that fact when the train stopped at the next station. The fireman testified, however, that there was nothing which could have been done to avoid striking the dog after he discovered that it was coming on the track.

The fireman did not testify in the dog case—as the engineer did in the cow case—that he had opened the cylinder cocks, and the jury evidently concluded that this was a precaution which, if taken, might have stopped the dog from coming on the track. Of course, the dog might have continued as the cow did, even though this precaution had been taken. Nevertheless, here was an agency provided for just such an emergency, and it was not employed. The noise and sight of escaping steam which would have followed the opening of the cylinder cocks might have checked the dog in his mad career, although the cow was heedless of her fate. The dog may have had more sense than the cow, and may have prized its life more highly. At any rate, there was at hand an agency which, as we understand the testimony, was available to the fireman as well as to the engineer, which was used in one case, and not employed in the other, and we think this testimony is sufficient to support the finding of the jury that the railway company did not overcome the statutory presumption of negligence which arose when it was shown that the train had killed the dog. It was the duty of the fireman to do what a reasonably prudent man would have done, and the failure to do this was negligence.

What we have just said explains the modification which the court made of defendant's instruction numbered 3. All the other instructions asked by the defendant, except that a verdict be directed in its favor, were given by the court. Instruction numbered 3, as asked by the defendant, reads as follows:

"The mere fact that the fireman on the defendant's train which struck and killed plaintiff's dog saw the dog as he jumped on the trestle ahead of the approaching train, about 125 feet in front of the engine, would not justify you in finding for the plaintiff, if you believe from the evidence that at the time the defendant's fireman saw plaintiff's dog it was then too late for him to cause the engineer to do anything that would bring his engine to a stop, and thus avoid the killing of the dog."

This instruction was modified by adding the words: "or otherwise prevent the injury." This modification permitted the jury to determine whether the failure of the fireman "to cause the engineer to do anything that would bring his engine to a stop, and thus avoid the killing of the dog," was the full measure of the fireman's duty under the circumstances. Under the facts stated we think the modification was proper, and that the jury was warranted in finding, that the fireman did not do all that a reasonably prudent man would have done.

The testimony is sufficient to support the verdict, and, as the instructions correctly declared the law, no error appears, and the judgment must be affirmed. It is so ordered.

BUTLER, J., disqualified, and not participating.